## Murray et al. *versus* The New York, Lackawanna & Western Railroad Company

103  37
147  562

103  37
20 SC ³254

103  37
e 25 SC ⁵651

1. Where the grantee in a deed is dead, the grantor is not a competent witness, under the Act of April 15th 1869 (P. L. 30), to impeach the title of the grantee's devisee, by showing that such deed, though absolute on its face, was intended as a conveyance in trust for the grantor and his heirs. Nor are the depositions of a grantor, taken shortly before his death, admissible for such a purpose.

2. Where the grantors in a deed, absolute on its face, execute a paper, sixteen years afterwards, in the natuie of a will, in which such conveyance is referred to as having been made in trust, such paper is not admissible in evidence to impeach the original deed or to vary its terms.

3. The evidence proper to be submitted to a jury to reform or impeach a written instrument, on the ground of fraud, accident or mistake, must be clear precise and indubitable; and the fact that words to this effect are repeated to the jury seven times, in the course of the instructions given by the court, cannot be complained of as error.

March 15th 1883. Before GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. MERCUR, C. J., did not sit; CLARK, J., absent.

ERROR to the Court of Common Pleas of *Bradford county:* Of January Term 1883, No. 120.

This was an issue, directed by the court, in the form of an action of trespass, by Sophia R. Murray, life tenant, and John H. Murray, Elizabeth D. Fairchild and Ann S. Murray, who claimed to be entitled in remainder, plaintiffs, against The New York, Lackawanna & Western Railroad Company, to recover damages sustained by the construction of the defendant's railroad through certain land claimed by plaintiffs.

On the trial, before MORROW, P. J., the following facts appeared :

Prior to 1861, the land in controversy was owned by Harris Murray, who was the husband of the plaintiff Sophia R. Murray, and father of the other plaintiffs. On June 5th 1861, Harris Murray and Sophia his wife conveyed this land, by deed, to Ellen M. Howard, another daughter of the grantors, under an agreement of the same date made by the said Ellen M. Howard and her husband Albert C. Howard containing the following stipulations : " First. That the said Harris and Sophia R. Murray may and shall have full possession of the said homestead farm so conveyed, for use and occupancy of it for and during the term of their natural lives ; that they shall have

all the income or profits of said farm so long as they may require or desire the same, they paying out of the same all taxes, assessments or other expenses on said estate.

" Second. That the said Albert C. and Ellen M. Howard obtain from John H. Murray a full discharge of all accounts and obligations of a pecuniary nature that the said John H. Murray now holds or professes to hold against the said Harris Murray, provided the same does not exceed the sum of one thousand dollars.

" Third. That the said Albert C. Howard and Ellen M. Howard shall pay upon the decease of the said Harris Murray and upon the decease of said Sophia R. Murray to the following persons the sums respectively affixed to their names, viz :   To James S. Murray as trustee for Eliza D. Fairchild, three hundred dollars.   To James S. Murray, son of said Harris Murray, one thousand dollars ; to Ellen M. Howard, daughter of said Harris Murray, six hundred dollars ; to Anna S. Murray, daughter of said Harris Murray, four hundred dollars ; also to the said Anna S. Murray the sum of three hundred dollars for a wedding outfit, should she be married at any time within ten years from this date, and also it is agreed that the said Anna shall have her support from said estate so long as she shall remain unmarried.

" Fourth. That the said parties shall pay to the said Harris Murray the sum of four hundred dollars, to be expended in repairing and improving said estate, and furthermore that as the said Harris Murray has become surety for a certain amount for said James S. Murray, which obligation is an incumbrance upon said estate, therefore it is understood that the said Albert C. and Ellen M. Howard shall be under no obligation to pay the herein mentioned sum of $1,000 to the said James S. Murray until the said surety has been annulled and said incumbrance removed from said estate."

In 1875, Ellen M. Howard died, leaving a will by which she devised and bequeathed to her husband all of her estate of every kind wheresoever situated.

On June 22d 1877, John H. Murray, James S. Murray, Eliza D. Fairchild and Ann S. Murray filed a bill in equity in the Court of Common Pleas of Bradford county against the said Albert C. Howard and his two daughters, to whom a voluntary conveyance of a portion of this land had been made, alleging that the conveyance of June 5th 1861 to Ellen M. Howard was obtained by fraud, and praying that testimony of witnesses to establish this fact might be perpetuated.   Under this bill the testimony of Harris and Sophia Murray was taken, a short time before the death of the former, which occurred August 4th 1877.

Two days before his death, Harris Murray and his wife, in the presence of witnesses, executed a writing setting out that the said conveyance had been made at the request of Albert C. Howard, with the agreement that the grantors were to have a life estate in the premises, and could at their option direct a conveyance of the same ; the said writing continuing as follows :

" It is our request and we do here request and direct, as we have before done, the said Albert C. Howard to make a conveyance of the title in remainder to the said premises to Selim Kirby of Nichols, N. Y., as trustee for such persons as we may desire should have the same at our death."

The instrument provided that the property should go to the children and grand children of Harris Murray, to take the same as if he had died intestate. After his death Sophia Murray was in possession of the premises until they were entered upon by the defendant railroad company in the construction of its road.

The widow and children of Harris Murray then presented their petition for the appointment of viewers to assess the damages, and in pursuance of these proceedings the present issue was awarded by the court.

An application by Sophia Murray, as life tenant, for a separate issue ; and one by the other plaintiffs, that damages might be assessed to the latter by a different jury, were refused. Exception. (Fourth and fifth assignments of error.)

The plaintiffs offered Sophia Murray as a witness to prove, First. " That the conveyance of June 5th 1861, from Harris Murray and wife, was given to Ellen M. Howard for the purpose of preserving to the grantors therein a life estate, and to be held by the grantee as a trustee for the children of the grantors, and that at the time of the execution of the deed, a writing was given by the grantee and her husband under which a life estate was reserved to the grantors. That after the payment of certain sums of money to their children, by the said Ellen M. Howard . . . . the said property was to be conveyed to any person the grantors might direct, upon the repayment to the said Ellen M. Howard, of the money so paid by her, and that she was during her life fully repaid. That the said conveyance was procured by Albert C. Howard, by inducements and representations that the said Harris Murray was not capable of taking care of his property, and that the property should be preserved for his children and disposed of by the said Harris Murray's direction. That at the time of the conveyance, June 5th 1861, Sophia Murray had no interest in the land conveyed, but the same belonged to Harris Murray. That the said Albert C. Howard and Ellen M. Howard acting in concert, procured the title as aforesaid not intending to carry out the purpose for

[Murray *v.* New York, &c. R. R. Co.]

which they procured it, but to fraudulently hold the same, and that they afterwards denied the trust."

Second. "That Albert C. Howard and Ellen M. Howard, his wife, induced the said Harris Murray and Sophia R. Murray to execute the deed of June 5th 1861, for the following purposes, namely: It was alleged by them that the said Harris Murray, on account of his intemperate habits, was liable to squander his real estate and that he ought to put the title of it in some one for the purpose of preserving a home for the grantors during their lives, and the remainder to the children of the said Harris Murray and wife. That it was first proposed the title should be put in James S. Murray, but it was finally arranged that the deed of June 5th 1861, should be executed, the said Howard and wife then agreeing that the title should be held for the purpose aforesaid and that at any time upon the request of the said Murray and wife they would convey the title to any person as trustee for the purpose aforesaid that the said Harris Murray and wife might direct. That the said Harris Murray and wife did afterwards request the said Howard and wife to convey the said property to James S. Murray as trustee, they having at that time fully repaid the said Albert C. Howard all the money they had advanced and fully compensated them for all their expenses and trouble. This not for the purpose of invalidating said deed, but to explain the same so that it may have the full force and effect intended by the parties."

Offers refused. Exceptions. (First and second assignments of error.)

The plaintiffs further offered the bill to perpetuate testimony, and the depositions of Harris Murray taken thereunder; also the testamentary writing of August 2d 1877. Refused. Exceptions. (Third and sixth assignments of error.)

The defendants requested the court to charge as follows:

(1) "In order to alter a written contract by adding a stipulation alleged to have been omitted, there must be clear, precise and indubitable evidence that it was the understanding of both parties that it should be inserted in the writing."

Affirmed. (Seventh assignment of error.)

(2) "To reform a written agreement on the ground of fraud, or mistake, the evidence must be clear, precise and indubitable."

Affirmed. (Eighth assignment of error.)

In the general charge the court further instructed the jury, when speaking of the character of the evidence necessary to establish the plaintiff's title, that it must be "clear, precise, and indubitable," the expression being repeated in the course of the charge, seven times. (Ninth assignment of error.)

Verdict for the defendant, as against John H. Murray, Ann

[Murray *v*. New York, &c. R. R. Co.]

S. Murray and Eliza D. Fairchild ; but for the plaintiff, Sophia R. Murray, assessing her damages at $2,354.40. Judgment thereon.

The plaintiffs thereupon took this writ of error assigning for error the refusal to admit the evidence offered by them, and the instructions given the jury, as above cited.

*Edward Overton, Jr.* (with whom was *John F. Sanderson*), for plaintiffs in error.—The fact that Harris Murray was dead was not a sufficient reason for excluding the testimony of Sophia R. Muaray, to impeach the deed of June 5th 1861. Harris Murray owned this land. He conveyed it to his daughter Ellen. He was a competent witness, prior to the Act of 1869, to show that Ellen took in trust for herself and her brothers and sisters. A grantor in a deed is a good witness to invalidate it. The rule that no man shall be permitted to impeach his own deed was introduced through policy, and is confined to negotiable instruments : McFerran *v*. Powers, 1 S. & R. 102 ; Brown *v*. Downing, 4 S. & R. 494 ; Barring *v*. Shippen, 2 Binney 165 ; Mulford *v*. Downer, 10 W. N. C. 446 ; Kronk *v*. Kronk, 4 W. & S. 127 ; Dayton *v*. Newman, 7 Harris 194 ; Miller *v*. Pearce, 6 W. & S. 97. The test of a witness's competency is, that he is in no way involved in the final result of the verdict : Ferree *v*. Thompson, 2 Smith 353 ; Wright *v*. Funck, 13 Norris 26 ; Sheetz *v*. Norris, 2 W. N. C. 637.

In all these cases the witness was allowed to invalidate his own deed, though one of the parties to the transaction was dead. So we say that Harris Murray, if living, would be a competent witness to show that the deed to Ellen M. Howard was obtained from him upon the promise and assurance that the title should be held for the benefit of all his children.

But it does not follow, if it were otherwise, that his widow would be excluded from testifying after his death. Where the relationship has ceased by death or divorce the wife may be admitted for or against the former husband or his representatives, or the converse : Wharton's Evidence, sec. 429 ; Robb's Appeal, 2 Out. 501.

The paper offered in evidence and rejected (sixth assignment of error), was a material part of the plaintiffs' case. The whole evidence went to show that Harris Murray reserved the right to say how, after the termination of the life estate, and the payment of the specific legacies to his children, the remainder of the property should be disposed of. It was to be by him alone or by him and his wife. The execution and delivering of the paper in question settled this and was material to establish the plaintiff's title. It was also a formal transfer of

[Murray *v.* New York, &c. R. R. Co.]

the trust and a final exercise of all the powers reserved by the grantors.

As to the other assignments. The evidence established that Harris Murray, in 1861, was feeble and intemperate; that Howard was his confidential adviser; that a deed of property was obtained from him for a totally inadequate consideration. These facts are sufficient to sustain the plaintiffs' claim : Jones's Appeal, 11 W. N. C. 258; Darlington's Appeal, 5 Norris 518; Perry on Trusts § 201.

There was no evidence in the case to warrant the affirming of the defendants' first point.

*D. A. Overton* (with whom was *B. M. Peck*), for defendant in error.—Sophia R. Murray was clearly an incompetent witness under the Act of 1869 ; she was a party to the record. The defendants were compelled to set up the title of A. C. Howard or otherwise pay damages twice. Ellen M. Howard, the "assignor of the contract in action" (in the meaning of the statute) was dead. There was no reason why the other parties should have a point strained in their favor in order to make Sophia R. Murray a witness ; and not only was Ellen M. Howard dead, but Harris Murray also, and when A. C. Howard was offered by defendants as a witness, the plaintiffs objected, "that the witness being interested is not competent to testify to anything that occurred prior to the death of Harris Murray." This objection was properly sustained by the court, and is equally applicable to Sophia R. Murray's testimony : Karns *v.* Tanner, 16 P. F. S. 305; Graves *v.* Griffin, 7 Harris 176. The paper referred to in the sixth assignment of error was merely a written declaration of a person who could not be a witness, and certainly was not evidence. The court committed no error in its statement of the law in regard to the character of proof necessary to impeach a deed : Spencer *v.* Colt, 8 Norris 314 ; Rowand *v.* Finney, 15 Norris 192.

Mr. Justice PAXSON delivered the opinion of the court, April 23d 1883.

The first three assignments raise substantially the same question, and may be considered together. The court below rejected the testimony of Sophia R. Murray, and the deposition of Harris Murray. The deposition was taken under a bill to perpetuate testimony. The witnesses were the grantors in the deed of June 5th 1861, to Ellen M. Howard. The latter was deceased at the time of the trial below, and the evidence was offered for the purpose of impeaching her deed by showing that it was obtained by the exercise of undue influence upon the grantors, and for a purpose which was subsequently repu-

diated in part at least by the grantee. Sophia R. Murray was a party to this proceeding; Harris Murray, her husband, was deceased. The case comes precisely within the ruling in Karns *v.* Tanner, 16 P. F. S. 297, where it was said : " When one of two parties to a transaction is dead, the survivor and the party representing the deceased party stand on an unequal footing as to a knowledge of the transaction occurring in the lifetime of the deceased. The enacting clause (Act of 1869) had opened the lips of all parties, but when death came in it closed the lips of one, and even-handed justice required the mouths of both to be sealed." Ellen M. Howard, the grantee is dead, as before stated, and it was sought to impeach the title of her devisee by the testimony of one of the grantors as to transactions which occurred prior to the death of the grantee. The inequality and injustice of this is so apparent that no extended discussion of this branch of the case is necessary. It is proper to add, how-ever, that upon the trial below the defendant offered Albert C. Howard, the husband and devisee of Ellen M. Howard, as a witness to sustain the deed. The witness was objected to by the plaintiff as incompetent, and the court excluded his testi-mony for the same reason that it rejected the evidence of Sophia R. Murray, and the deposition of Harris Murray. The plaintiffs having established this principle upon the trial below have no reason to complain if we apply it here.

The fourth and fifth assignments refer to matters that were in the discretion of the court below. In such cases we reverse only for an abuse of discretion, and no such abuse has been shown.

The sixth assignment is not sustained. The paper referred to was executed by the grantors sixteen years after the deed to Ellen M. Howard, and under no known rule of law would it be evidence to impeach said deed or vary the terms thereof.

The remaining assignments allege error in the charge of the court. Complaint is made that the learned judge, in his in-structions to the jury, said that, " In order to alter a written contract, by adding a stipulation, alleged to have been omitted, there must be clear, precise and indubitable evidence that it was the understanding of both parties that it should be inserted in the writing." And again, that " To reform a written agree-ment on the ground of fraud or mistake, the evidence must be clear, precise and indubitable," and this or similar language was repeated to the jury seven times, as we are informed by the ninth assignment.

This instruction was not too strong, and as it was good law, its repetition to the jury could have done no harm. Speaking for myself, I do not think seventy times seven would have been too often ; speaking for the court, I will confine myself

to the repetitions stated in the assignment. We do not wish to be misunderstood upon this question. If a solemn instrument like a deed, which has been upon record for many years, can be reformed, and titles destroyed by parol evidence, which is anything short of "clear and indubitable," no one would care to hold real estate in Pennsylvania, for it would be a most uncertain holding. A deed ought to be worth something, yet it would possess little value if it could be set aside by loose testimony of parties in interest. Where the evidence of fraud, accident, or mistake is so direct and clear that a chancellor would reform the deed, it is one thing. Anything short of such evidence ought not to be submitted to a jury. This is the doctrine of the later cases : Spencer *v.* Colt, 8 Norris 314 ; Rowand *v.* Finney, 15 Id. 192, and in view of the present law of evidence, it would be hazardous to relax the rule.

We find no error in this record.

Judgment affirmed.