# Elizabeth Carey, Plff. in Err., v. John M. Fairchild et al., Admrs.

When a party to a thing or contract in action is dead and his rights have
passed, either by his own act or by that of the law, to another who repre-
sents his interest in the subject of controversy, the surviving party to that
subject shall not testify to matters occurring in the lifetime of the adverse
party.

In ejectment by administrators who have obtained title by foreclosure of
a mortgage to their intestate, the mortgagor, although not a party to the
action, is incompetent as a witness to testify that he obtained title by
means of an assignment of a parol contract from the defendant, and that
at the time of the assignment, and as the sole inducement therefor, the plain-
tiffs' intestate promised the defendant a sum of money, still unpaid, and
promised that the defendant's possession should not be disturbed until the
sum should be paid.

(Argued April 13, 1887.  Decided May 2, 1887.)

January Term, 1887, No. 338, E. D., before MERCUR, Ch. J.,
GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.   Error
to the Common Pleas of Luzerne County to review a judgment
confirming a referee's report for the plaintiffs in an action of
ejectment.   Affirmed.

The facts as found by the referee, Geo. K. Powell, Esq.,—
appointed under the act of April 6, 1869, and its supplements,
relating to Luzerne county—are stated in his report, which was
as follows:

The action is one of ejectment and involves a lot of land situ-
ate in the fourteenth ward of the city of Wilkesbarre.

The plaintiffs made out a prima facie case without contest,
establishing the following facts, to wit:

1.  John Batterton was the owner of the tract in dispute in

---

NOTE.—For illustrations of adverse interest, rendering the witness in-
competent, see Gardner v. McLallen, 79 Pa. 398; Leech v. Bonsall, 9 Phila.
204; Murray v. New York, L. & W. R. Co. 103 Pa. 37; Sutherland v. Ross,
140 Pa. 379, 21 Atl. 354; Patterson v. Dushane, 115 Pa. 334, 8 Atl. 440.

1872, and in that year contracted in writing to sell the same to Elizabeth Carey, the defendant, who thereupon took possession and has retained the same ever since.

2. On June 1, 1876, Elizabeth Carey assigned the said contract to Dr. J. P. Vought, acknowledging under seal the receipt from said Vought of the full consideration money.

3. The same day John Batterton, the holder of the legal title, conveyed the same by deed to said Vought, who simultaneously executed and delivered a mortgage of the premises to John Fairchild to secure $800 loaned by Fairchild to Vought, for the express purpose of paying Batterton the purchase money due him.

4. The loan thus secured not being paid, the administrators of Fairchild, who had meantime died, caused a writ of scire facias to be issued in 1881 upon said mortgage, prosecuted it to judgment, sued out a writ of levari facias thereon, by virtue of which a sheriff's sale of the land in question was made, at which they, said administrators, became the purchasers.

5. The title having thus become vested in them by a sheriff's deed duly acknowledged, the plaintiffs instituted this action to recover possession against both Elizabeth Carey and J. P. Vought.

All those facts were practically admitted; but, Dr. Vought having formally entered a disclaimer before trial, Mrs. Carey alleged, in defense of her right to possession, that simultaneously with her assignment to Vought, and as the sole inducement to and sole consideration for it, John Fairchild agreed that if she would so assign her contract, thereby enabling Vought to mortgage to Fairchild, he, Fairchild, would pay her the amount of money she had paid upon and put into the property, viz., about $440, and further agreed that she should retain possession of the property till he paid her the said sum.

To establish said defense Mrs. Carey offered Dr. J. P. Vought as a witness, and, though plaintiffs' counsel vigorously objected, the referee took the testimony of said witness.

After a very careful consideration of the many authorities cited by counsel,—especially of Arthurs v. King, 84 Pa. 525; Murray v. New York, L. & W. R. Co. 103 Pa. 37; Tinstman v. Cr;ushore, 104 Pa. 192, and Karns v. Tanner, 66 Pa. 297,—the referee is of the opinion that he erred in admitting the testimony of said Vought; and hence does not consider it in arriving at his decision of the case.   Dr. Vought is incompetent, both

because of interest and because called to impeach his own title and that of his mortgagee.

In the language of the court in Arthurs v. King, 84 Pa. 525: "Before the passage of the act of April 15, 1869, he would have been incompetent on the ground of interest; and we cannot see that he is in any better position since."

William McDermott, William Vandermark, and Peter Miller were also produced by the defendant and examined. Their testimony would be strongly corroborative of Dr. Vought's, but relates only to declarations of John Fairchild, subsequent to the alleged agreement and hence is not, of itself, sufficient to establish a contract. See Plumer v. Guthrie, 76 Pa. 441; Nicolls v. McDonald, 101 Pa. 514.

The referee therefore finds the following conclusions of fact:

1. The defendant, Elizabeth Carey, went into possession of the land described in the writ in 1872 by contract of purchase from John Batterton, the owner, and has remained there ever since.

2. On June 1, 1876, she, said defendant, assigned her interest in said land and contract, by a conveyance in writing duly executed, to J. P. Vought, acknowledging in said conveyance to have received from said Vought full consideration therefor, and on the same day John Batterton, the holder of the legal title, conveyed the same to said Vought, who at the same time executed and delivered a mortgage of the said land to John Fairchild to secure $800 loaned by said Fairchild to said Vought, the same being the balance then and there paid to Batterton in full of his contract with Elizabeth Carey.

3. John Fairchild died in 1879, intestate; and, said mortgage being overdue and wholly unpaid, the plaintiffs, his administrators, caused a writ of scire facias thereon to issue against J. P. Vought, regularly obtained judgment and became the purchasers of the land in question at a sheriff's sale on a writ of levari facias issued upon said judgment,—the sheriff's deed being duly acknowledged prior to the issuing of the writ in this case.

4. Vought, the other defendant named in the writ, has occupied the premises since 1872, with the exception of about two weeks, but filed a disclaimer just prior to this reference.

5. Elizabeth Carey defends this action solely on the ground of her contract from Batterton, and an alleged unconditional

verbal promise from John Fairchild, at the time of her conveyance to Vought, to pay her some $400, the amount she had paid Batterton on her contract, including taxes and insurance, and to allow her to remain in possession until she got her money, with the further allegation that this was the consideration of her conveyance to Vought, and that neither the latter nor Fairchild ever paid her anything for her assignment.

6. No improvements have been put upon the property since the date of the Batterton contract. The purchase money thereof was $1,025, and an execution on a confession of judgment in the contract at the suit of Batterton v. Carey, for purchase money in arrear and due, was in the sheriff's hands on June 1, 1876, aforesaid.

7. It is not proven that the alleged verbal promise was ever made by John Fairchild.

The foregoing cover all the requests to find matters of fact submitted by the plaintiffs except the one numbered "7" in "plaintiffs' points" hereto attached, which is not found, because the referee does not think it pertinent to the issue.

As conclusions of law the referee finds:

1. That the plaintiffs' proofs make out a prima facie case.

2. That no defense to the plaintiffs' claim is established by competent evidence.

3. That the plaintiffs are entitled to a judgment for the land described in the writ.

The plaintiffs, by their attorney, submitted requests to find eight matters of law, which, with the referee's answers, are as follows, to wit:

That under the defense set up by Elizabeth Carey the plaintiffs were not required to show title in them, further back than from those whose title is shown by the evidence to have been conveyed to Batterton.

*Ans.* The referee so finds.

J. P. Vought was an incompetent witness for the defense, of the alleged verbal promise of Fairchild, both by reason of interest and on account of the policy of the law; and his evidence should be excluded in considering the truth or falsity of such allegation.

*Ans.* The referee so finds.

Without testimony of any witness present when the alleged

verbal promise was made, it cannot be sufficiently proven by evidence of subsequent declarations of Fairchild.

*Ans.* The referee so finds.

Even though the alleged verbal contract of Fairchild is satisfactorily and sufficiently established by the evidence, it is void under the statute of frauds and perjuries, and is no defense to this action.

*Ans.* The referee does not so understand the law of the case, and declines to so find.

Even though the alleged verbal contract of Fairchild be sufficiently proven by competent oral testimony, and be valid notwithstanding the statute of frauds and perjuries, it created no interest in, or lien or charge upon, the land, available as a defense to this action which was not discharged by the sheriff's sale on the mortgage.

*Ans.* The referee declines to so find, both because he does not think it material as the case now stands, and because he considers that if the alleged contract were proven it would avail and defeat a recovery.

The defendant is barred from setting up said alleged verbal contract, irrespective of the statute of frauds and perjuries, or the sheriff's sale under the act of limitations of March 27, 1713, P. D. 930, old ed.

*Ans.* The referee declines to so find, and is of the opinion that it was not necessary for Mrs. Carey to become the aggressor, but that she had the option to set up and prove the alleged contract by way of defense as to an action of ejectment.

Even though said alleged verbal promise be valid and effectual at this time and in this action, the defendant must account to the plaintiffs at the same time for the rents, issues, and profits of the property since June 1, 1876.

*Ans.* The referee declines to so find because he does not consider it necessary to consider that question in coming to a decision of this case.

The plaintiffs are entitled to an unconditional recovery in this case, and judgment should be entered for them for the land described in the writ.

*Ans.* The referee so finds, for the reasons fully set forth above.

Judgment should therefore be entered in favor of plaintiffs and against the defendant, for the land described in the writ.

The defendant's exceptions to the referee's report specified, *inter alia,* the rejection of Dr. Vought as an incompetent witness; and the action of the court below in overruling the exceptions on this point was assigned as error.

*T. H. B. Lewis,* for plaintiff in error.—Dr. Vought has no real, legal interest whatever in the result of this suit. He has no interest in the title to the land; for whatever interest he may have had passed by the judicial sale, and is disavowed by his disclaimer. He has no interest in the possession; for, having disclaimed, any attempted possession would be trespass. He has entered into no covenants with either party to the suit, and cannot therefore be charged with, or relieved from, the performance of any. He cannot be charged with costs, by reason of his disclaimer. He cannot be charged with mesne profits for any alleged possession prior to his disclaimer; for by rule 13 of our common pleas "if the plaintiff in ejectment intends to claim mesne profits he shall file a statement of the amount claimed, and length of time during which time he demands said profits, and give notice of the same to the defendant or his attorney, by copy of such statement, at least thirty days before the trial. On failure so to do, he shall not be permitted to claim mesne profits in that suit."

No such statement was filed or notice given. Besides, any liability for mesne profits would necessarily arise after the sheriff's sale to the defendants in error; for up to that time Dr. Vought was the owner of the property. The sheriff's sale, however, occurred after the death of John Fairchild. Dr. Vought is therefore a competent witness on the question of mesne profits, whenever it properly arises.

The witness cannot be said to be interested because of any possible liability to Mrs. Carey; for, having persistently asserted that the agreement was with Mr. Fairchild, she is estopped from asserting it to have been with anyone else; and even if she were not estopped, the result of this suit would determine nothing as to the liability or nonliability of any person aside from the parties to the suit.

Interest, to exclude a witness, must be a real, legal interest, dependent upon the result of the suit, and not a speculative or possible interest. Updegraff v. Rowland, 52 Pa. 317; Rees v. Livingston, 41 Pa. 113; Harlan v. Harlan, 20 Pa. 303; 1 Greenl. Ev. §§ 386, 387.

Since the act of 1869, the court should discountenance all objections on the score of interest or policy, unless made clearly to appear. McClelland v. West, 70 Pa. 183.

The award of arbitrators, in the trial of an appeal from it, is not evidence; and it is error to permit it to be read. Shaeffer v. Kreitzer, 6 Binn. 432, 433.

The title of Dr. Vought is identical with that of the defendants in error, the transfer having been by judicial sale. That title, so far as this suit is concerned, depends upon the validity of Mrs. Carey's assignment of the Batterton contract. If that assignment is valid, then the title is valid; and any impeachment of the title by her must be an impeachment of her assignment. She makes no attack upon the title, either intentional or incidental. The validity of her defense depends upon the validity of her assignment, because her defense is an effort to maintain a claim for the consideration upon which the assignment was made; and any assertion of a claim for consideration necessarily asserts the validity of the instrument or transaction for which the consideration is claimed. So, also, any testimony going to the establishing of such a claim would also necessarily tend to the validating of the transaction on which the claim was made. Nor does the fact that the claim for consideration in this case includes the possession of the property for an indefinite time alter the case; for a consideration may be any lawful thing upon which the contracting parties agree. Nor does the claim to the right of possession impeach the title of the owner; else every claim to possession by a tenant would be an impeachment of his landlord's title.

*L. H. Bennett*, for defendants in error.—This case is excepted from the operation of the act of April 15, 1869, removing incompetency of persons and parties as witnesses from interest or policy of law, and stands as though that act had not been passed.

This is an action by administrators to enable the estate they represent to realize on a mortgage for the land in question given to their decedent and foreclosed by them in due course of the settlement of the estate. It is a case where the assignor of the thing or contract in action is dead. Arthurs v. King, 84 Pa. 525; Karns v. Tanner, 66 Pa. 297; Murray v. New York, L. & W. R. Co. 103 Pa. 37; Tinstman v. Croushore, 104 Pa. 192; Hoopes v. Beale, 90 Pa. 82; Taylor v. Kelly, 80 Pa. 95.

The witness Vought was called to show, in direct contradiction of the Carey deed of assignment to him, and its acknowledgment that he had paid her the full consideration, that he in fact had not done so. This would leave him still liable to her for such consideration money according to the written papers; and her defense prevailing, that liability would be wiped out. But he was called to show, further, that his own liability under the papers was no liability at all, and that the decedent was the man who, by parol, promised to pay the consideration of the Carey deed to him. A witness prima facie liable on a contract cannot, by his own testimony, controvert such liability, and thereby remove his prima facie incompetency as a witness on the score of interest. Meason v. Kaine, 63 Pa. 335; Purviance v. Dryden, 3 Serg. & R. 402; Hinckling v. Fitch, 1 Miles (Pa.) 208; Hogeboom v. Gibbs, 88 Pa. 237.

Vought was an incompetent witness by reason of the policy of the law; because by his oral testimony it was sought to impeach the title to him, as also his contemporaneous mortgage to our decedent and our subsequent title under the sheriff's deed on the foreclosure of the mortgage, by subjecting the Carey title to him, our mortgage and sheriff's deed to an adverse right of possession in Mrs. Carey, as against the plain terms and legal effect of those conveyances. This the policy of the law does not allow. Murray v. New York, L. & W. R. Co. 103 Pa. 37; McIldowny v. Williams, 28 Pa. 492.

The testimony of Vought was of a transaction between himself, Mrs. Carey and our decedent, whose mouth is closed. It was therefore incompetent, as against the policy of the law on that score. Arthurs v. King, 84 Pa. 525; Tinstman v. Croushore, 104 Pa. 192; Karns v. Tanner, 66 Pa. 297; Graves v. Griffin, 19 Pa. 177; Hoopes v. Beale, 90 Pa. 85.

A party alleging error in this court must not only point it out but show that he has thereby suffered an injury; otherwise, the judgment will not be reversed here. Unangst v. Kraemer, 8 Watts & S. 391; Peterson v. Speer, 29 Pa. 478.

The whole of Vought's excluded testimony fails to establish any verbal contract of the character alleged, with that precision which the law demands to overthrow a title evidenced by deed, and is insufficient in itself to submit to a jury. Woods v. Farmare, 10 Watts, 195; Charnley v. Hansbury, 13 Pa. 16; Hart v. Carroll, 85 Pa. 508.

If such alleged contract was a verbal mortgage or in the nature thereof, it is not recognized in the law, and is no defense whatever to an ejectment. Bower v. Oyster, 3 Penr. & W. 239; Shitz v. Dieffenbach, 3 Pa. St. 233.

Whatever the legal character of such alleged contract, its vitality perished with the sheriff's sale. Campbell's Appeal, 36 Pa. 247, 78 Am. Dec. 375.

Our sheriff's sale on that mortgage discharged all claim of title or liens arising between the date of Batterton's contract and such sheriff's sale. Barb v. Sayers, 107 Pa. 246; Pierce v. Gardner, 83 Pa. 211; Thompson v. Adams, 55 Pa. 479; Bower v. Oyster, 3 Penr. & W. 239.

An action of ejectment can neither be defended nor maintained in Pennsylvania against the legal title, except on an outstanding lease, or an equitable interest in the land itself; or a mortgage or a lien charged upon the same; or upon a condition broken; either of which must be manifested in writing as the law demands. There is no writing in this case. As already shown, the alleged contract was void as a mortgage. It was void as a lease after three years from June 1, 1876. Whiting v. Pittsburgh Opera House Co. 88 Pa. 100; McCafferty v. Griswold, 39 Phila. Leg. Int. 392; Wheeler v. Conrad, 6 Phila. 209.

It was in no sense a contract of sale; and if it were, it was not taken out of the statute of frauds, because there were no improvements. Whiting v. Pittsburgh Opera House Co. 88 Pa. 100.

Possession was not taken but merely continued. Aitkin v. Young, 12 Pa. 15; Christy v. Barnhart, 14 Pa. 260, 53 Am. Dec. 538; Myers v. Byerly, 45 Pa. 368, 84 Am. Dec. 497.

It was not an implied equitable lien for purchase money, as there can be none where the vendor never had or has parted with the legal title. Kauffelt v. Bower, 7 Serg. & R. 64, 10 Am. Dec. 428, and Semple v. Burd, 7 Serg. & R. 286; Megargel v. Saul, 3 Whart. 19.

It was void as an express lien for purchase money in the conveyance to Vought, because not therein declared and set forth, but distinctly negatived thereby. Kensinger v. Smith, 94 Pa. 384.

And it was not a conveyance upon condition, but only upon an alleged consideration amounting to a covenant. Cook v. Trimble, 9 Watts, 15; Perry v. Scott, 51 Pa. 119.

And even if a condition, it was void because neither written in

the conveyance nor elsewhere. Cook v. Trimble, 9 Watts, 15; Bear v. Whisler, 7 Watts, 144.

OPINION BY MR. JUSTICE TRUNKEY:

John Batterton and Elizabeth Carey on June 1, 1876, conveyed the land to Dr. J. P. Vought, vesting in him a complete title. On the same day John Fairchild loaned Vought $800, which was secured by a mortgage of the land. The administrators of Fairchild, having obtained judgment upon the mortgage and issued execution thereon, purchased the property at sheriff's sale. They brought this action in ejectment against the persons in possession, Mrs. Carey and Dr. Vought, upon whom the writ was served, and both appealed from the award of arbitrators. More than three years after the suit was begun Vought filed a disclaimer.

To defeat the plaintiffs' recovery the defendant sought to establish by the testimony of Vought, "that simultaneously with her assignment to Vought and as the sole inducement to and sole consideration for it, John Fairchild agreed that if she would so assign her contract, thereby enabling Vought to mortgage to Fairchild, he, Fairchild, would pay her the amount of money she had paid upon and put into the property, viz., about $440, and further agreed that she should retain possession of the property 'til he paid her that sum." Without stopping to consider whether, were it admitted that Fairchild made such oral promise, it would be a good defense, we will pass to the only question which is presented for review, namely, Was Vought a competent witness to impeach the mortgage?

The vesting of the title in Vought, the giving of the mortgage and the making of the alleged oral agreement were at the same time. Fairchild is dead, and the plaintiffs who purchased at the sheriff's sale hold under the mortgage executed by Vought. They represented the deceased party. When a party to a thing or contract in action is dead, and his rights have passed, either by his own act or by that of the law, to another who represents his interest in the subject of controversy, the surviving party to that subject shall not testify to matters occurring in the lifetime of the adverse party. Karns v. Tanner, 66 Pa. 297.

Where the grantee in a deed is dead, the grantor is not a competent witness to impeach the title of the grantee's devisee by showing that the deed was intended to be in trust for the grantor

and his heirs.   Murray v. New York, L. & W. R. Co. 103 Pa. 37.

Vought was holder of the title to the land and the mortgagor. Aside from his testimony there is nothing against the plaintiffs' title, for on the face of the deeds and record they have as good title as was vested in Vought.   Upon the defendant's showing, she was interested in the transaction.   Both are excepted out of the operation of the act of 1869, by the proviso which compels the surviving party to a deed or contract to be silent, unless he who succeeds to the right of the dead consents that the survivor may speak.   The defense was an attempt to show by oral testimony that the mortgage to John Fairchild was something else than its written terms, and the mortgagor was incompetent for that purpose.

Had Vought not been made a party in the ejectment the case would be no different.   Being incompetent, whether a party or not in the action, the act of March 28, 1867, does not apply.

Judgment affirmed.