## Van Voorhis *v.* Rea Bros. & Co., Appellants.

*Broker—Pledge of stock—Conversion to bailee's own use.*

After an owner of stock deposited with a broker to secure advance-
ments has paid all advancements, the broker has no right to pledge the
stock to another person for his own indebtedness in such a way as to irre-
vocably pass the title; and if he does so he converts it to his own use,
and is liable to the owner for its value.

*Parol evidence to vary written contract.*

The uncorroborated testimony of one witness is insufficient to vary or
contradict the terms of a written instrument.

Argued Nov. 10, 1892. Appeal, No. 182, Oct. T., 1892, by
defendants, from judgment of C. P. No. 3, Allegheny Co.,
Nov. T., 1891, No. 544, on verdict for plaintiff, Isaac S. Van
Voorhis, for use of A. A. Hutchinson. Before PAXSON, C. J.,
STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and
HEYDRICK, JJ.

Trespass for the conversion of stock.

At the trial, before McCLUNG, J., it appeared that plaintiff
was attorney in fact for A. A. Hutchinson. On May 5, 1891,
A. A. Hutchinson purchased in Paris, through the Anglo-
American Banking Co. and its correspondents, Prince & Co.,
of Boston, one hundred shares of the preferred stock of the Chi-
cago & Northwestern Railroad Co., and also certain bonds. He
paid $2,000 on account and was charged by Prince & Co. with
the remainder of the purchase money. On June 30, 1891, plain-
tiff, as attorney in fact of Hutchinson, requested Rea Bros. &
Co. to lift the stock and bonds held by Prince & Co. On the
same day plaintiff wrote to Prince & Co. as follows:

"You will please deliver to S. V. White & Co., for the ac-
count of Rea Bros. & Co. of this city, 100 shares of Chicago
& Northwestern Railroad, preferred, and $10,000 Missouri, Kan-
sas and Texas second incomes, purchased by my principal, A.
A. Hutchinson, through the Anglo-American bank of Paris,
May 5, 1891. I have made arrangements with Rea Bros. to
take up the said bonds and stock."

S. V. White & Co. were the New York correspondents of defendants, with whom they transacted all their brokerage business, the two offices being connected by a private telegraph wire. On the day following this order defendants notified plaintiff that the stock had been delivered to them through their correspondents, S. V. White & Co. of New York. The day following the receipt of this notice that the stock and bonds had been delivered to the defendants, and that they, defendants, had charged plaintiff with $15,953, he paid to defendants on account of that indebtedness the sum of $6,000 in cash, for which defendants gave him a receipt.

Subsequent to this, plaintiff, as attorney in fact for Hutchinson, had other dealings with defendants in the way of purchasing securities, and on Aug. 1, 1891, defendants had in their possession the following stocks belonging to Hutchinson or plaintiff, his attorney in fact, namely: Fifty shares of Chicago, Burlington & Quincy R. R.; 400 shares of National Lead Trust; 200 Mo. Pacific Railroad Co.; 100 Chicago & Northwestern, preferred; on all of which there was due and payable the sum of $20,051.14. On July 31, 1891, plaintiff paid defendants the sum of $15,000 in cash, on account of this balance, and at the same time directed defendants to deliver to Thomas P. Day, cashier of the People's National bank of Pittsburgh, all of the stocks excepting 100 shares of Chicago & Northwestern railroad on which there was still due $5,051.14.

On Sept. 1, 1891, a statement rendered by defendants showed that plaintiff was indebted to them in the sum of $5,014.45, on account of one hundred shares of Chicago & Northwestern stock. This balance was paid to the defendants in full, and a receipt was given by them. On Sept. 22, S. V. White & Co., suspended payment, and upon the same day plaintiff made a demand upon defendants for his stock, which demand was refused upon the ground that defendants were unable to get the stock from their correspondents in New York.

Defendants' points were as follows:

"1. If the jury find that the stocks in controversy were placed with S. V. White & Co. in the name and account of defendants, at plaintiff's request, the verdict must be for defendants, except for the amount the defendants received from White & Co. *Answer:* Refused under the facts in this case." [1]

" 2. It being admitted that the defendants offered to pay plaintiff the amount received by them from White & Co., the plaintiff cannot recover more than this, unless the jury find that the plaintiff could have received more than 50 per cent had the settlement with White & Co. not been made by defendants. *Answer:* Refused under the facts in this case." [2]

Plaintiff's points were as follows :

" 1. The admitted fact being that the defendants were paid in full for the one hundred shares of stock, and either kept the plaintiff's money, or used it in payments on general account with their correspondents, and not for the specific stock, your verdict must be for plaintiff." Affirmed. [3]

" 2. If the jury believe the dealings between the parties to have been as shown upon the papers and statements in evidence, it was an ordinary transaction of a broker carrying stock for a customer, in which the defendant is bound to account to plaintiff for his stock, or its value, the full price thereof having been paid defendants." Affirmed. [4]

" 3. There is no evidence in this case that the transaction is other than that shown upon the face of the papers, and this being so, the defendants must account to plaintiff for the value of the stock, with interest from date of payment." Affirmed. [5]

The court instructed the jury to find a verdict for plaintiff for the value of the stock at the date of suit, Oct. 31, 1891, with interest, there being no evidence in this case of its value, except upon the date of failure of S. V. White & Co., viz. : Sept. 22, 1891. [6]

Verdict and judgment for plaintiffs for $14,382.61. Defendants appealed.

*Errors assigned* were (1–6) instructions, quoting them.

*Willis F. McCook*, for appellant, cited Story's Agency, § 28 ; Whitlock v. Hicks, 75 Ills. 460.

*P. C. Knox, Jas. H. Reed* with him, for appellee, cited Northrup v. Shook, 10 Blatchf. C. C. R. 243 ; Biddle on Stock Brokers, 70.

OPINION BY MR. JUSTICE HEYDRICK, January 3, 1893 :

The several writings offered in evidence by the plaintiff and received without objection all relate to the same subject, and

are the evidences of successive steps in one transaction. Taken together they constitute a contract of bailment, and show that the purposes of the bailment were accomplished when the plaintiff · demanded a redelivery of the stocks and bonds to himself. With the added proof of demand, of refusal, and of the value of the property, the plaintiff made a prima facie case. The defendants not denying the writings, or alleging fraud, accident or mistake, undertook to show by one of their number that the contract was something different from that which was written. This they could not do by the uncorroborated testimony of one witness, flatly contradicted as he was by the plaintiff, or even uncontradicted: Phillips v. Meily, 106 Pa. 536 ; Thomas & Sons v. Loose, 114 Pa. 35 ; Jackson v. Payne, Id. 67. If, however, their parol testimony had been sufficient to overcome the written contract, they would not, upon their own showing, have escaped liability. They pledged the plaintiff's stocks to S. V. White & Co. for their own indebtedness in such manner that that firm could make use of them, and without so ear-marking them that they could be followed and recovered upon payment of the money for which they were pledged. Conceding that so long as the plaintiff was indebted to them for advances, they had, under the arrangement which they allege, the right to pledge the stocks in their own account with White & Co., they had no right to do so after the plaintiff had discharged his indebtedness to them ; and when, after their own lien upon them was gone, they continued them in that pledge they appropriated them to their own use, and thereby became liable for their value. And so they understood. They not only admitted their liability to the plaintiff, but, clothed with apparent ownership, they irrevocably passed the title to the stocks to White & Co. by their settlement with that firm, and thereby put it out of the plaintiff's power as well as their own to recover them.

The learned court below seems to have been fully justified in saying to the jury that there was no controversy about the value of the stock.

None of the assignments of error being sustained the judgment is affirmed.